DORA M. NEWSOME AND HUSBAND, J. C. NEWSOME, v. BANK OF AHOSKIE.

(Filed 29 September, 1915.)

**1. Bills and Notes—Banks and Banking—Collateral Notes—Other Indebtedness—Contracts.**

Where a collaterial note given to the bank for borrowed money provides that the collateral may be appropriated by the bank to the "extinguishment of this note or of any other liability of the undersigned to the bank, whether now existing or hereafter arising," etc., the provision of the note applies only to transactions directly between the maker of the note and the bank, and not to notes given by the maker to third persons and thereafter purchased by the bank.

**2. Same—Officers—Knowledge Implied—Trusts and Trustees.**

A director of a bank is affected with knowledge of the transactions between the bank and those dealing with it in the course of its business; and where the proceeds of sale of collateral to a note the bank holds is more than sufficient to pay off the indebtedness of the maker, the bank holds the surplus in trust for the maker; and it would be a breach of trust, not permissible, for it to allow one of its directors to sell a note he holds of the same maker to the bank, and apply this surplus to its payment under a general provision in the note, with collateral, that the collateral was likewise applicable to the maker's general indebtedness to the bank.

**3. Bills and Notes—Banks and Banking—Collaterals—Trusts and Trustees—Breach of Trusts.**

The collateral given with a note to the bank is held by the bank in trust for the maker, and the bank is not permitted to divert the surplus of the proceeds of the sale of the collateral contrary to the terms of the trust as expressed in the note.

**4. Same—Bank Directors—Fraud—Releasing Trust Fund—Creditors' Bill.**

A plaintiff bank having acquired from one of its directors a note indorsed by the director, upon the agreement that it would first exhaust the collateral to another note given by the same maker to the bank, alleged fraud of the maker of the note in procuring the collateral, and attempted to convert the action into a general creditors' bill, and subject the surplus of the collateral to the payment of the first note, which did not come within the terms of the latter one. It appeared that the bank was the only creditor prosecuting the action, and it is held that the bank was required to first relinquish the collateral it held as trustee before it would be permitted to institute an action of this character.

**5. Bills and Notes—Banks and Banking—Trusts and Trustees—Division of Funds—Receivers—Accounting.**

Where a note to a bank has been paid in full by the sale of collateral thereto, and a surplus then remains in the hands of the bank, which it wrongfully seeks to apply to other indebtedness of the maker, and it appears that the surplus has been placed in the hands of a receiver pending an action brought by the maker of the note against the bank, it is held that the maker is entitled to a decree that the receiver pay over to him the ascertained surplus; and a personal judgment should be entered in the bank's favor against the maker for the amount due by him. And it not appearing in this case whether the maker or receiver has paid the original obligation of the maker to the bank, an accounting between them will be ordered.

APPEAL by plaintiff from *Connor, J.,* at the July Term, 1914, of HERTFORD.

Civil action, tried upon these issues:

1. Did R. E. Cowan, in November, 1907, sell to J. C. Newsome and make and deliver to him a deed for the land described in the deed from R. E. Cowan to Dora M. Newsome, of record in Book 32, page 415, in the office of the register of deeds of Hertford County? Answer: "Yes."

2. If he made and delivered to J. C. Newsome such deed, did the said J. C. Newsome on 21 March, 1908, procure said R. E. Cowan to destroy the said deed, and to make and deliver to Dora M. Newsome a deed for the same land, of record in Book 32, page 415, in the office of the register of deeds of Hertford County? Answer: "Yes."

3. If so, did the said J. C. Newsome procure the said R. E. Cowan to destroy the deed to J. C. Newsome and to execute the deed to Dora M. Newsome, as alleged, with the intent to hinder, delay and defraud the creditors of the said J. C. Newsome, including J. R. Garrett? Answer: "Yes."

4. Was the deed from R. E. Cowan to Dora M. Newsome, as alleged in the complaint, fraudulent and void as to creditors of J. C. Newsome, and as to the indebtedness of J. C. Newsome evidenced by the note for $731.67, now held by the Bank of Ahoskie? Answer: "No."

5. Were the notes held by the Bank of Ahoskie as collateral made payable to Dora M. Newsome with intent on the part of J. C. Newsome to hinder, delay and defraud his creditors? Answer: "Yes."

6. Is the Bank of Ahoskie the owner of the note given by J. C. Newsome to J. R. Garrett, as alleged in the complaint? Answer: "Yes."

7. Is J. C. Newsome indebted to the Bank of Ahoskie, as alleged in the complaint; and if so, in what sum? Answer: "$731.67."

8. What amount did J. C. Newsome owe the Bank of Ahoskie at the time of the execution of his note for $1,100, given 15 September, 1911? Answer: "$1,100," by consent.

9. When was the J. R. Garrett note assigned to the Bank of Ahoskie? Answer: "18 January, 1912."

10. Was said assignment absolute, *bona fide,* and for a valuable consideration? Answer: "Yes."

11. Were the collateral notes described in the complaint deposited with and received by the Bank of Ahoskie as the property of Dora M. Newsome? Answer: "No."

12. Was the note executed by J. C. Newsome, payable to A. C. Vann, barred by the statute of limitations at the time of the execution of the deed from Cowan to Dora M. Newsome? Answer: "Yes."

13. Was the note executed by L. M. Outlaw and J. C. Newsome to J. W. Godwin barred by the statute of limitations as to J. C. Newsome at the time this action was begun? Answer: "No."

14. Was it so barred at the time the amendment was made in this action, towit, 18 July, 1914? Answer: "No."

15. Was the consideration for the collateral notes described in the complaint the purchase price of part of the land conveyed to Dora M. Newsome by Cowan? Answer: "Yes, in part."

Upon the findings of the jury, the court rendered judgment:

"That the defendant Bank of Ahoskie recover of the plaintiff J. C. Newsome the sum of $731.67, with interest thereon from 16 January, 1912, and the costs of this action, to be taxed by the clerk of this court.

"It is further ordered, considered and decreed that J. C. Vann and Stanly Winborne, receivers, out of the funds in their hands, being the balance of the proceeds of the said collateral notes, pay to the Bank of Ahoskie the sum of $731.67, with interest from 16 January, 1912, until paid, and the cost of this action, and that the said Bank of Ahoskie, upon the receipt of said sum, shall cancel the judgment herein rendered, if said amount is sufficient to pay the same in full, and if not, shall credit the said judgment with the amount of said payment; that if there be any surplus after paying said judgment, the said receivers shall pay the same to J. C. Newsome and Dora M. Newsome."

The plaintiffs appealed.

*Winborne & Winborne, Pruden & Pruden, W. W. Rogers, E. T. Snipes, S. Brown Shepherd for the plaintiffs.*

*J. E. Vann, Winston & Matthews for the defendant.*

BROWN, J. This case was before the Court at Spring Term, 1914, 165 N. C., 92, which is referred to for a statement of the cause of action. The Superior Court rendered judgment upon the pleadings in behalf of the plaintiff, but this Court was of opinion that issues were raised by the pleadings to be submitted to the jury.

The undisputed facts, as presented by the present appeal, are that J. C. Newsome executed to the defendant bank his note for $1,100, and deposited therewith as collateral certain notes given by T. B. Hall, $765; Norman Hall, $600, and Hoard Newsome, $700, all payable to Dora M. Newsome. These notes were deposited by J. C. Newsome, by and with the consent of his wife, Dora, as collateral security for the said $1,100. The paper-writing executed at the time by J. C. Newsome contains the following clause:

"The said bank is hereby authorized and empowered by the undersigned, upon the nonperformance of any of the promises or agreements herein contained, to appropriate to the payment and extinguishment of this note or of any other liability of the undersigned to said bank, whether now existing or hereafter arising, any and all property or

moneys of the undersigned in the possession of said bank, on. deposit or otherwise, whether this note or said other liability be then due or not due. If said collaterals or any of them be exchanged for others, such others shall be held by said bank on the terms above set forth. The undersigned hereby waive the benefit of homestead exemption as to this debt and contract."

It appears that on 16 January, ·1912, J. C. Newsome executed his note to J. R. Garrett for $731.67. This note, remaining unpaid, Garrett assigned the same to one Harmon, who refused to take it unless he could sell the same to the defendant bank, of which Garrett is a director.

The character of the transaction is disclosed by the following paperwriting:

Bank of Ahoskie having this day purchased of A. R. Harmon a note given to me, J. R. Garrett, the undersigned, by J. C. Newsome, for the sum of seven hundred thirty-one and 67-100 dollars ($731.67), dated 16 January, 1912, and by me (·J. R. Garrett, the undersigned) indorsed to the said Harmon, and the said bank having to purchase the said note without some guarantee of its payment when due, and said Harmon having refused to accept said note from me (J. R. Garrett, the undersigned) unless he could sell same to said bank: Now, therefore, I do hereby guarantee to said Bank of Ahoskie the payment of the said note when due, together with all expenses, interest, and attorneys' fees said bank may be put to in the collection of said note: *Provided,* the said bank shall have all collateral they now have in hand belonging to the said Newsome until said bank is forced to give them up by law, or until satisfactorily settled and have first exhausted all legal remedy against said Newsome to enforce collection of said note before first calling on me therefor.

This 17 January, 1912.                        J. R. GARRETT. [SEAL]

The bank now claims under the above recited clause in the paperwriting, signed by Newsome, the right to retain the Garrett note out of the proceeds of the collateral deposited by Newsome. This collateral, by an agreement, has been put in the hands of receivers, to be collected by them, and it is admitted in the record in this case that the note for $1,100 has been fully paid.

We think that the exact question has been determined by this Court in *Bank v. Furniture Co., ante,* 180. In that case the bank undertook to retain out of collateral deposited by the Murphy Furniture Manufacturing Company other notes or evidences of debt which the bank had purchased against the said company, not embraced by the collateral contract. In rendering the judgment of this Court, *Justice Hoke* said:

"Applying these principles, we concur in his Honor's view that plain-

tiffs are not entitled to recover of the individual defendants. The evident purpose of these parties is to strengthen the credit of their company in its dealings with the bank, to the extent of the amount stipulated, and to save themselves the necessity and inconvenience of indorsing specifically every indebtedness which said bank might hold against the company, and from a consideration of this purpose and the language of the instrument and the facts in evidence, we think it clear that it was the intent of these parties, as expressed in the contract, to confine the obligation of the individual defendants to indebtedness arising out of transactions directly between the bank and their company, and that it did not and was not intended to include any and every indebtedness which the bank might acquire from third parties."

There is another principle involved in this case, not discussed in the above case. It is admitted that Garrett was a director in the bank. He is affected with knowledge of its transactions, and it is a fair inference, in fact, an almost irresistible conclusion, that when he assigned the note to Harmon, it was his purpose that Harmon should transfer it to the bank and that the bank should retain it out of the proceeds of the collateral which it held for the $1,100 note.

The bank held that collateral in trust to secure the note which Newsome had made to itself and whatever proceeds remained after the payment of that note, the bank held in trust for Newsome and his wife. It would be a gross breach of that trust to permit the bank officers to divert the proceeds of the collateral from the legitimate purposes expressed in the instrument in order to save a debt for one of the directors. Such transactions are against a wholesome and sound public policy.

The defendant seeks to "mend its lick" by asking the Court to permit the following amendment to the answer: "And that the said J. C. Newsome was also indebted unto A. C. Vann in the sum of $50 on a note, with interest, and unto J. W. Godwin in the sum of $20 on a note, with interest, and that he procured said deed to be made to his wife for the purpose of hindering, delaying, and defrauding them and his other creditors in the collection of these debts, all as above alleged."

By this amendment the defendant seeks to convert the action into a creditors' bill for the purpose of subjecting the proceeds of this collateral to the payment of other indebtedness of Newsome upon the ground of fraud. This will not avail the defendant, for the law will not allow a trustee to plead the outstanding indebtedness of the *cestui que trust* for the purpose of collecting the trustee's own debt. It is admitted in the record, not only that the note for $1,100, mentioned in the pleadings, has been fully paid, but that all the judgments set out in the answer, as existing against J. C. Newsome, have been paid.

The jury have found that the Vann debt is barred by the statute of limitations and neither Vann nor Godwin, who is said to hold a $20

note, have seen fit to file their petition in this proceeding and make themselves parties to it. They ask no relief against Newsome, and it does not lie in the mouth of this defendant, who held this fund in trust, to ask it for them. To show that they are not parties to this action and ask no relief in it, no judgment is rendered in their behalf, and their names are not even mentioned in the decree of the court.

If the bank seeks to subject the proceeds of this collateral deposited by the plaintiffs with them as security for the $1,100 debt, it has the right to institute a proceeding for that purpose; but it must first surrender all the plaintiff's collateral or the proceeds thereof which it holds in trust for them.

The purposes of the trust having been fulfilled and the debt paid, the bank has no right to divert the said trust fund to the payment of the Garrett note, simply because it alleges that Mrs. Newsome acquired the collateral by fraud. The bank must return to Mrs. Newsome the collateral which it wrongfully retained before it can proceed against her upon any such grounds. It will not be allowed to take advantage of its position to divert the trust fund to another purpose entirely foreign to the agreement.

For the reasons given, we are of the opinion that the court below erred in rendering judgment set out in the record. The defendant is entitled to a personal judgment against the plaintiff J. C. Newsome for $731.67 and interest. The plaintiffs are entitled to a decree (inasmuch as it is admitted that the $1,100 note has been paid) directing the receivers to pay over to the plaintiffs the proceeds of the collateral collected for them.

It does not appear whether Newsome, himself, paid the $1,100 note, or whether the receivers paid it out of that collateral. If the receivers paid it, they would be entitled to credit for it; if Newsome paid it, then the receivers must account for the entire proceeds, less the cost of collecting.

The cause is remanded to the Superior Court of Hertford County with instructions to enter judgment in accordance with this opinion.

Error.